## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

DAVID FELTY
ADC # 95976                                                                                          PLAINTIFF

V.                                      5:07CV00232 JLH/HDY

ARKANSAS DEPARTMENT OF CORRECTION
and JOHN DOES, Medical Doctors, Arkansas Department
of Correction and Correctional Medical Services                                DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Chief Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.  The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

Plaintiff, a prisoner now housed at the Ouachita River Unit of the Arkansas Department of Correction, filed this lawsuit *pro se* pursuant to 42 U.S.C. § 1983, alleging various claims related to the settlement of a 1996 federal court case. The sole remaining issue in this case is Plaintiff's entitlement to injunctive relief against the Arkansas Department of Correction under Title II of the Americans with Disabilities Act (as well as a the disposition of the remaining "John Doe" Defendants that Plaintiff listed in his original Complaint). The Arkansas Department of Correction Defendants have filed a Motion for Summary Judgment (docket entry #83), supported by a Brief (docket entry #84) and Statement of Facts (docket entry #85), as required by Local Rule 56.1.

In light of his *pro se* status, Plaintiff was given thirty days in which to respond to the summary judgment motion. *See* docket entry #86. Plaintiff has not, however, submitted a response

of any kind to the motion or the Court's Order. Under the circumstances, the case is appropriate for dismissal for failure to prosecute or otherwise comply with Local Rule 5.5(c)(2), which provides that if any communication from the Court to a *pro se* litigant is not responded to within thirty days, the case may be dismissed without prejudice. The Defendants have shown, however, that they are entitled to a decision in their favor on the merits of their motion; accordingly, the following recommends that the Motion for Summary Judgment be granted and Plaintiff's claims be dismissed with prejudice.

### **I. Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, the Court should view the facts in a light most favorable to the non-moving party and give the nonmoving party the benefit of any inferences that can logically be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "sufficient probative evidence [that] would permit a finding in [their] favor on

more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994)(quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id*. Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the nonmoving party fails to provide a statement of facts with citations to the record, that party fails to create a genuine issue of material fact. E.D. Ark. L.R. 56.1(c)("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ").

## II. Background

Plaintiff did not file a responsive pleading, nor respond to the Defendants' statement of material facts or file his own statement of material facts. Thus, the Court accepts as true all of the facts stated in Defendants' statement of material facts:

Plaintiff entered the ADC as an inmate in March of 1991. During the relevant time period, from April 5 until June 3, 2005, Plaintiff was housed in the Tucker Unit. At that time, Plaintiff had an M-2 medical restriction with a limitation of no squatting.

While at the Tucker Unit, Felty applied to Riverside Vocational Technical School at the Tucker Unit. On April 28, 2005, Plaintiff received a memorandum from Mark Faver, Coordinator of Riverside, stating that due to his medical restrictions, Plaintiff did not meet the minimum physical requirements for the "Combination Welding" or the "Building and Grounds Maintenance" classes. Plaintiff was told to instead consider the Drafting Technologies class as an alternative. The sum of

Plaintiff's claim is that he was denied admission into these vo-tech classes because of his "disability," i.e., that his "No Squatting" restriction is the equivalent of a disability under the Americans with Disabilities Act (ADA).

### III. Analysis

Title II of the Americans with Disabilities Act prohibits public entities from denying the benefits of services, programs and activities to a "qualified individual with a disability" on account of the individual's disability. State prisons are "public entities" within the meaning of Title II of the ADA, and the term "qualified individual with a disability" extends to inmates. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210-11 (1998). The Supreme Court has recognized that state prisons do indeed provide prisoners with "benefits" of "programs, services and activities." *Id*. at 210. "Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." *Id.*

To prove a claim under Title II of the ADA, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from the participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such entity; (3) by reason of such disability. *Randolph v. Rogers,* 170 F. 3d 850 (8th Cir. 1999). In order to establish the first element of a claim under Title II of the ADA, the plaintiff must show that he is disabled and "that he 'meets the essential eligibility requirements' for participating in the program, with or without reasonable accommodations." *Love v. Westville Corr.*

*Center*, 103 F. 3d 558 (7th Cir. 1996)(*quoting* 42 U.S.C. § 12131(2))[1]. The ADA defines "disability" as:

>
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Courts apply a three-part test to determine whether a plaintiff has an actual disability under the ADA. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002)( "*Williams*" ). First, the plaintiff must show the presence of a "mental or physical impairment." *Id.* at 194. The plaintiff must then show that the impairment affects a "major life activity." Third, the plaintiff must show that the impairment "substantially limits" that major life activity. *Id.*  In turn, "major life activities" are defined as including "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1329 (11th Cir. 2001)(*quoting* ADA regulations in 29 C.F.R. § 1630.2(i)).[2]

---

[1] 42 U.S.C. § 12131(2) states:
 The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

[2] According to the EEOC regulations interpreting the ADA,

> The term substantially limits means:
> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition,

The Defendants have argued that Plaintiff has not shown that he has an impairment as that term is understood under the Americans with Disabilities Act, and has not argued nor shown that his "no squatting" restriction substantially limits a major life activity. While a limitation such as "no squatting" is limiting to an extent, this does not rise to the level of a substantial limitation under the ADA. *See, e.g.*, *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 685 (8th Cir. 2003)(where plaintiff was numb in parts of the toes on his left foot and his left leg, his left knee collapsed, and he walked with a cane on occasion, his ability to walk was moderately limited, but under *Williams* the restriction on walking was not severe); *Gretillat v. Care Initiatives*, 481 F.3d 648, 661, 653 (8th Cir. 2007)(where plaintiff had knee replacement surgery and was permanently restricted in her ability to crouch and squat, such restrictions did not constitute a substantial restriction under the ADA); *Miller v. Wells Dairy, Inc.*, 252 F. Supp. 2d 799 (N.D. Iowa Mar. 25, 2003)(permanent restriction on kneeling and squatting did not substantially limit the major life activity of bending).

For the foregoing reasons, the Court recommends a finding that plaintiff is not "disabled" under the ADA, because he is not substantially limited in any major life activity. The Court also finds there is no evidence in the record to support the arguments (not raised by Plaintiff but addressed by Defendants in their summary judgment motion) that Plaintiff has a record of a disability or is regarded as disabled. Because the Court finds that Plaintiff is not disabled under Title II, it need not make a recommendation on the question whether Plaintiff can meet the second or third

---

    manner, or duration under which the average person in the general population can
    perform that same major life activity.
29 C.F.R. § 1630.2(j)(1).

elements of the *prima facie* case under Title II. Nonetheless, the Court finds no evidence in the record to establish that Plaintiff was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; or that such exclusion, denial of benefits, or other discrimination, was by reason of a disability.

### IV. Conclusion

IT IS THEREFORE RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (docket entry #83) be GRANTED;

2. Plaintiff's claims be dismissed with prejudice; and

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this   21   day of April, 2009.

_____
UNITED STATES MAGISTRATE JUDGE